UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PETER A. SCOTT, SR.

                           Plaintiff,

v.

                                                                9:12-CV-0084

                                                  (GLS/TWD)

IMAM SHAMSIDDEEN,

                           Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

PETER A. SCOTT
98-B-0124
Plaintiff *pro se*
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

HON. ERIC T. SCHNEIDERMAN            KEVIN P. HICKEY, ESQ.
Attorney General for the State of New York
Attorney for Defendant
The Capitol
Albany, New York 12223

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

This *pro se* civil rights action commenced by Plaintiff Peter A. Scott, pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c). Plaintiff claims that while he was confined in Shawangunk Correctional Facility ("Shawangunk"), Defendant Marshall Shamsiddeen ("Shamsiddeen"), Muslim Chaplain at Shawangunk since 2004, deprived him of his right to the free exercise of religion by denying him

Eid-ul-Adha religious meals on November 6, 2011 and again on November 12, 2011. (Dkt. No. 1 at ¶ 6; Dkt. No. 20-2 at ¶ 3.) Defendant Shamsiddeen filed an Answer to Plaintiff's Complaint (Dkt. No. 14) and now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 20.) Plaintiff has not filed papers opposing Shamsiddeen's motion. For the reasons that follow, I recommend that Defendant Shamsiddeen's motion be granted.

I. **BACKGROUND**

Plaintiff claims to have been registered as a Muslim with the Department of Corrections and Community Supervision ("DOCCS") since 1998.[1] (Dkt. No. 1 at 7.) Eid-ul-Adha is a religious holiday celebrated by Muslims to honor the prophet Ibrahim's willingness to sacrifice his first-born son Ismail as an act of submission to God's command and his son's acceptance of being sacrificed. (Dkt. No. 20-2 at ¶ 8.) The celebration of Eid-ul-Adha at Shawangunk in 2011 included prayer services, a religious meal with a special menu for Muslim inmates on November 6th, and a family day event with a second religious meal on November 12th. *Id.* at ¶¶ 7, 11; *see generally* Dkt. No. 20-5 at 5-6, 14-16.

Plaintiff was in the Special Housing Unit ("SHU") at Shawangunk at the time of the Eid-ul-Adha celebration in 2011. (Dkt. No. 1 at 7.) Pursuant to DOCCS Directive No. 4933, N.Y. Comp. Codes R. & Regs. tit. 7, § 304.10(d), inmates in SHU are not permitted to attend religious services. (Dkt. No. 20-2 at ¶ 9; Dkt. No. 20-8 at 12.) However, under DOCCS Directive No. 4933, inmates in SHU are permitted special meals prepared in connection with religious holidays

---

[1] Shawangunk records show that Plaintiff was registered as a Shi'ite Muslim at the facility effective December 27, 2010. (Dkt. No. 1 at 13.) Although Plaintiff was registered as a Muslim at Shawangunk, Defendant, to the best of his knowledge, never had any direct contact with him. (Dkt. No. 20-2 at ¶ 6.)

2

and, as with other Muslim inmates, are provided with special menus in connection with the celebration of Eid-ul-Adha. (Dkt. No. 20-2 at ¶¶ 10-11.)

Defendant's duties as Chaplain include, among other things, facilitating special religious programs and events and approving inmates who are to participate in services and receive special meals in observance of religious holidays such as Eid-ul-Adha. *Id*. at ¶¶ 4-5. When the Superintendent and Deputy Superintendents approve a special religious event, a call-out list is prepared by Defendant's clerk and, upon Defendant's approval, is forwarded to the Call-out Clerk. *Id.* at ¶ 12. In preparation for the observance of Eid-ul-Adha in 2011, Defendant forwarded a call-out list to the Shawangunk Call-out-Clerk on September 26, 2011. *Id*. at ¶ 13; Dkt. No. 20-5 at 3-4.

Because the call-out list that had been prepared for the Eid-ul-Adha observance in 2011 indicated that Plaintiff had been transferred to another facility, the kitchen did not prepare special Eid-ul-Adha meals for him on November 6th[2] and 12th in 2011. (Dkt. No. 20-2 at ¶¶ 13-14; Dkt. No. 20-5 at 3.) According to Defendant, the failure to provide Plaintiff with the two religious meals in connection with the Eid-ul-Adha celebration resulted from a mistaken understanding that Plaintiff had been transferred and did not occur as the result of the intentional exclusion of Plaintiff from the call-out list. (Dkt. No. 20-2 at ¶ 16.) Defendant denies any intent to deny Plaintiff the right to receive the special religious meals. *Id*. Defendant has stated in his

---

[2] Plaintiff has alleged in his Complaint that he was deprived of an Eid-ul-Adha religious meal on November 6, 2011. (Dkt. No. 1 at 5.) In his Declaration in support of his motion for summary judgment, Defendant states that the religious meal was on November 7, 2011. (Dkt. No 20-2 at ¶ 15.) It is not entirely clear from the parties' papers when the meal was served because the date of the Eid-ul-Adha prayer service and religious meal was to be November 6th or November 7th, depending on the sighting of the moon. (Dkt. No. 20-5 at 5.)

Declaration that the facility records were corrected subsequent to the mistake and, it is Defendant's understanding that Plaintiff has since been allowed to practice his religion with no further problems. *Id*. at ¶¶ 17-18.

On November 15, 2011, Plaintiff filed a grievance regarding his failure to receive the Eid-ul-Adha meals. (Dkt. No. 20-6 at 4.) The Investigative Report on the grievance acknowledged that Plaintiff was a registered Muslim and should have received his religious meals. *Id*. at 5. Defendant disclosed in a signed statement in the Investigative Report that "It was a mistake. My clerk thought Mr. Scott had left the facility." *Id*. The Inmate Grievance Review Committee noted that staff had acknowledged a mistake had been made. *Id.* at 3. The Superintendent responded that "[t]he meals were not provided due to a misunderstanding acknowledge (sic) by Imam Shamsiddeen that grievant had transferred," and noted that "[f]ood service and ministerial services are aware of the error and have updated their records accordingly." *Id.* at 3.

## II. PROCEDURAL BACKGROUND

Plaintiff commenced in this action on January 18, 2012. (Dkt. No. 1.) His Complaint named three Defendants, including Defendant Shamsiddeen. *Id*. In a Decision and Order filed on April 20, 2012, Judge Sharpe dismissed Plaintiff's Complaint as against Defendants J. Rapp, Food Service Administrator at Shawangunk, and S. Chumas, Special Events Coordinator at Shawangunk for failure to state a claim on initial review. (Dkt. No. 8.) The dismissal was without prejudice. *Id*. Reviewing Plaintiff's Complaint generously, as required given Plaintiff's *pro se* status, Judge Sharpe concluded that Plaintiff's claims against Defendant Shamsiddeen

required a response.[3]  *Id*. at 7.

Defendant Shamsiddeen filed an Answer to Plaintiff's Complaint on June 29, 2012. (Dkt. No. 14.)  He thereafter filed the motion for summary judgment now before me for report and recommendation.  (Dkt. No. 20.)  Plaintiff has filed no opposition to the motion despite having been granted an extension of time to May 6, 2013 within which to do so.  (Dkt. No. 23.)

## III.  APPLICABLE LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-252 (1986).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986).

---

[3] Judge Sharpe made clear that his ruling with regard to Defendant Shamsiddeen was not on the merits, and that the District Court expressed no opinion as to whether Plaintiff's claims against Defendant Shamsiddeen could withstand a properly filed motion to dismiss or for summary judgment. (Dkt. No. 8 at 7-8.)

"Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) JCF, 1999 WL 983876 at *3, U.S. Dist. LEXIS 16767 at *8 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

Plaintiff's failure to oppose Defendant's summary judgment motion does not mean that the motion is to be granted automatically. An unopposed motion for summary judgment may be granted "only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (citations and internal quotation marks omitted). Where, as in this case, a party has failed to respond to the movant's statement of material facts as required under L.R. 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record,[4] and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the

---

[4] L.R. 7.1(a)(3) provides that "<u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>." However, see *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met [his9 burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the

6

possible consequences of failing to respond to the motion.[5] *See Champion,v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996.) A plaintiff's verified complaint should be treated as an affidavit which can be relied upon in opposing defendant's motion.[6] *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.")

## IV. ANALYSIS

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F. 3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). The reach of the free exercise clause extends to "an inmate's diet and participation in religious meals." *Johnson v. Guiffere*, No. 9:04-CV-57, 2007 WL 3046703, at *4, 2007 U.S. Dist. LEXIS 98781, *14-15 (N.D.N.Y. Oct. 17, 2007) ("Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights.") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 204-05 (2d Cir. 2004)).

However, based upon the current record, no rational fact-finder could conclude that Defendant's failure to catch the mistake concerning Plaintiff's whereabouts made by his clerk in preparing the call-out list for Eid-ul-Adha religious meals "amounted to anything more than

---

statement of undisputed facts in the moving party's [Statement of Material Facts]. It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

[5] Defendant has complied with L.R. 56.2 by providing Plaintiff with the requisite notice of the consequences of his failure to respond to his summary judgment motion. (Dkt. No. 20-1 at 1.)

[6] Plaintiff's Complaint in this case was properly verified by declaration under 28 U.S.C. § 1746. (Dkt. No. 1 at 6.) *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (use of the language "under penalty of perjury" substantially complies with § 1746).

7

negligence, which is not actionable under the First Amendment." *Tafari v. Brown*, No. 9:10-CV-1065 (GTS/DRH), 2012 WL 1098447, at *6, 2012 U.S. Dist. LEXIS 45055, at *16 (N.D.N.Y. Mar. 30, 2012); *see also Cusamano v. Sobek*, 604 F. Supp.2d 416, 498 (N.D.N.Y. 2009) ("negligence is not actionable under the First Amendment or any other provision of the Constitution") (punctuation omitted); *see also Lovelace v. Lee,* 472 F.3d 174, 201 (4th Cir. 2006) ("[n]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause"). Nor are negligent actions that "impinge to some degree on an inmate's religious practices" sufficient to support a claim under the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*. *See Carter v. Washington Dept. of Corr.*, No. C11-5626 RJB/KLS, 2013 WL 1090753, at *14, 2013 U.S. Dist. LEXIS 36367, at *39 (W.D. Wash. Feb. 27, 2013); *Lovelace*, 472 F.3d at 194 (simple negligence does not suffice to meet the fault requirement under RLUIPA).

Furthermore, while it may still not be entirely clear, it appears that a prisoner "must show at the threshold that the disputed conduct substantially burdens[7] his sincerely held religious beliefs" to state a First Amendment free exercise claim. *Salahuddin,* 467 F.3d at 274-75.

---

[7] Although the Second Circuit has applied the "substantial burden" test in its most recent prison free exercise cases, it has done so while explicitly refusing to adopt or endorse the test. The *Ford* court noted that the Circuits apparently are split over whether prisoners must show a substantial burden on their religious exercise in order to maintain free exercise claims. Nevertheless, the *Ford* court held that since the plaintiff had not challenged the application of the substantial burden requirement, the court would proceed as if the requirement applied. "Likewise, the *Salahuddin* court noted that '[r]esolution of this appeal does not require us to address Salahuddin's argument that a prisoner's First Amendment free-exercise claim is not governed by the substantial burden threshold requirement,' because defendants 'never proceed to argue that we should find any particular burdened religious practice to be peripheral or tangential to [plaintiff's] religion.' The court then proceeded as if the substantial burden requirement applied." *Pugh v. Goord*, 571 F. Supp. 2d 477, 497 n.10 (S.D.N.Y. 2008) (citations and some punctuation omitted).

RLUIPA likewise has a substantial burden threshold for liability. *See* 42 U.S.C. § 2000cc-1(a) ("No government shall impose a substantial burden on the religious exercise of [inmates] . . . unless the government demonstrates that imposition of the burden on that person . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.")

"A substantial burden is more than an inconvenience." *Gill v. Defrank*, No. 98 Civ. 7851 (NRB), 2000 WL 897152, at *1, 2000 U.S. Dist. LEXIS 9122, *4-5 (S.D.N.Y. July 6, 2000). Existing case law supports the conclusion that missing two Eid-ul-Adha religious meals, especially as the result of a mistake, is not enough to substantially burden Plaintiff's exercise of his religious rights under the free exercise clause or to state a claim under RLUIPA. *See, e.g.*, *Smith v. Graziano,* No. 9:08-CV-469 (GLS/RFT), 2010 WL 1330019, at *9, 2010 U. S. Dist. LEXIS 33811, at *30 (N.D.N.Y. March 16, 2010) (cancellation of two religious services, which appeared to have been isolated occurrences rather than a systemic problem or policy of denying religious services, constituted a *de minimis* or insubstantial burden on plaintiff's ability to freely exercise his religion, thereby warranting dismissal of plaintiff's First Amendment claim); *Hankins v. NYS Dept. of Correctional Services*., No. 9:07-CV-0408 (FJS/GHL), 2008 WL 2019655, at *5 & n.42, 43, 2008 U.S. Dist. LEXIS 68978 (N.D.N.Y. Mar. 10, 2008) (causing an inmate to miss one religious service, especially where it resulted from a mistake followed by efforts to rectify it, does not constitute a violation of RLUIPA); *Hysell v. Pliler,* No. CIV S-04-03455-FCD-CMK-P, 2007 WL 149961, at * 2008 U.S. Dist. LEXIS 2721, at *24-26 (E.D. Cal. Jan. 14, 2008) (admittedly erroneous denial in specific instances of access to artifacts plaintiff claimed were necessary to practice his religion, followed by attempts to rectify the error, did not

place a substantial burden on plaintiff either under the free exercise clause or RLUIPA).

Because the undisputed evidence establishes that Defendant's actions were, at best, merely negligent, and under applicable law, missing two Eid-ul-Adha religious meals imposed only an insignificant burden on Plaintiff's ability to freely exercise his religion that is not actionable as a violation of either his First Amendment rights or RLUIPA, I recommend that Defendant's motion for summary judgment be granted, and Plaintiff's Complaint be dismissed.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 20) be **GRANTED**; and it is further

**RECOMMENDED** that judgment be entered dismissing Plaintiff's Complaint; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: May 28, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge